**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY** | **:** | **CIVIL ACTION** |
| **COMPANY** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 22-824-MAK** |
| | **:** | |
| **ANDREW LAUZON** | **:** | |

## MEMORANDUM

**KEARNEY, J.**                                                                                           **February 14, 2023**

Courts applying Delaware law for the last quarter century hold an insurer who paid a landlord for a fire loss at her property cannot then turn around and sue the tenant for negligence in causing the underlying fire unless the tenant's lease clearly expressed an intent to hold the tenant liable for fire damages. We today study a residential lease where the landlord could have but did not allocate the burden of a loss due to fire on her property to the tenant. The landlord did not impose liability on the tenant for negligence in causing a fire or impose an obligation to purchase insurance. The insurer agreed to insure for fire loss. It arguably could have declined to issue the insurance policy. It instead argues we should construe missing language in the lease to infer the tenant should be obligated to pay the insurer in subrogation when the landlord and tenant never agreed to the tenant being obligated to pay the landlord for negligence causing a fire in the leased property. We follow long standing Delaware law and today hold a tenant is assumed to be a co-insured under the landlord's home insurance policy absent contrary language in the lease with the tenant. We grant the tenant's motion to dismiss the landlord's insurance company's claim against him.

## I.   Alleged facts

Cecilia Craig leased a property she owned to Andrew Lauzon.[1] Mr. Lauzon and Ms. Craig

signed a lease for his use of the Property with three obligations material to our analysis:

> **14. MAINTENANCE AND REPAIRS:** The Tenant is responsible for all repairs needed in
> or about the Leased Premises up to and including $80. … B. If any required repair is caused
> by the negligence of the Tenant and/or Tenant's guests, the Tenant will be fully responsible
> for the cost of the repair and/or replacement that may be needed.[2]
>
> **18. RULES AND REGULATIONS**: … B. Absolutely no smoking is permitted in the
> Leased Premises.[3]
>
> **20. INSURANCE:** Although not required, Tenant is encouraged to obtain personal
> property/renter's insurance with an insurance company properly licensed to do business in
> the state. Tenant is solely responsible for any damage or loss of the Tenant's personal
> property to the extent that the law permits.[4]

Ms. Craig purchased an insurance policy to reimburse her for losses caused by a fire at the

Property from State Farm Fire and Casualty Company. Ms. Craig did not require Mr. Lauzon

obtain fire or other hazard insurance. Ms. Craig instead "encourage[d]" but did not require Mr.

Lauzon to obtain "personal property/rental insurance" and made him solely responsible for damage

or loss to his own **_personal_** property. Mr. Lauzon maintained his own insurance policy with an

unpleaded insurer.[5]

And then a fire occurred at the Property on November 29, 2021 and spread through the

structure.[6] Mr. Lauzon, the only person on the Property at the time, negligently caused the fire by

carelessly disposing of cigarettes in violation of the Residential Lease Agreement's no-smoking

policy and smoke-free property addendum.[7]

State Farm paid Ms. Craig approximately $192,000 under her purchased insurance policy

for losses to the Property caused by the November 29, 2021 fire.[8] It succeeded to Ms. Craig's

rights as her subrogee under the Policy. State Farm now sues Mr. Lauzon for negligence as the

subrogee of Ms. Craig.[9]

## II.   Analysis

Mr. Lauzon moves to dismiss arguing State Farm cannot step into the shoes of its insured Ms. Craig and sue him as another co-insured tenant on the insured property under Delaware law.[10] We studied the lease between Ms. Craig and Mr. Lauzon as a whole.  We agree with Mr. Lauzon as a matter of law.

We begin with a reminder of how subrogation works: "[a]n insurer who pays a loss suffered by the insured is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose tort caused the loss."[11] But an insurer cannot subrogate against its own insured or co-insured and, for the last twenty-five years, we consider residential tenants co-insured under their landlord's fire insurance policy unless the lease "clearly expresses" an intent to the contrary under Delaware law. This is known as the "*Sutton* rule" adopted by the Judge Del Pesco of Delaware Superior Court, and affirmed by the Delaware Supreme Court, in *Lexington Insurance Co. v. Raboin*.[12]

Mr. Lauzon argues as a matter of law he is deemed an insured under Ms. Craig's policy and cannot be sued by State Farm in subrogation. If Mr. Lauzon is a co-insured under the policy by application of the *Sutton* rule, then State Farm cannot subrogate its rights against him. State Farm acknowledges Delaware's application of the *Sutton* rule but contends this case is distinguishable because Section 14.B. of the Residential Lease Agreement between Mr. Lauzon and Ms. Craig expressly held Mr. Lauzon, as tenant, liable for damage to the Property.[13] State Farm argues the *Sutton* rule does not apply and it may proceed on its subrogation action against Mr. Lauzon.

### A.   Delaware follows the *Sutton* rule.

The "*Sutton* rule" derives from the eponymous *Sutton v. Jondahl*, a 1975 case from the Oklahoma Court of Appeals.[14] Tenant Mr. Jondahl rented a home for his family from the Suttons. Central Mutual Insurance Company issued a fire insurance policy to the Suttons. Mr. Jondahl's minor son accidentally started a fire in the rented home. The insurance company paid for the loss and then, as subrogee, sued Mr. Jondahl for breaching his duty to properly supervise his son.

A jury found in favor of the insurance company. The Oklahoma Court of Appeals reversed, finding, among other trial errors, the insurance company did not have a right to subrogation.[15] The Oklahoma appeals court explained tenants are considered co-insureds of the landlord "absent an express agreement between the two to the contrary …"[16] The reasoning for this principle is "derived from a recognition of a relational reality, namely, that both the landlord and tenant have an insurable interest in the rented premises" and the Suttons purchased fire insurance to protect the mutual interests in the property against loss from fire.[17]

The appeals court reasoned the landlords could have, but did not, include in the lease agreement a requirement the tenant secure fire insurance on the premises and instead elected to purchase coverage.[18] The court concluded "[b]asic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant ***absent an express agreement by the latter to the contrary***."[19] The appeals court further reasoned the insurer should not be allowed to shift a fire loss to a tenant even if the tenant negligently caused the fire because "to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant — a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord."[20]

4

Judge Del Pesco adopted the *Sutton* rule under Delaware law twenty-five years ago when addressing the insurer's subrogation rights after a fire in an apartment rented by college students. The landlord's insurer in *Lexington Ins. Co. v. Raboin* paid the loss and then sought to subrogate its loss by bringing a negligence action against the student tenants. The insurer alleged an improperly wired ceiling fan installed by the tenant students caused the fire and violated the landlord's regulations prohibiting tenants from making alterations, improvements or additions to the rental unit without the landlord's prior written consent. The tenants moved for summary judgment arguing they are impliedly co-insureds under the terms of their lease and shielded from the insurance company's subrogation action.

Judge Del Pesco agreed with the tenants, finding they are co-insureds under the landlord's fire insurance policy.[21] Judge Del Pesco grounded her decision in two principles: the language of the lease and the law of subrogation. She first examined the language of the lease as a whole and found it contemplated a division of risks between the landlord and the tenant. The lease:

- Disclaimed the landlord's liability for loss or damage to the tenant's "person or property," with the tenant agreeing to be solely responsible for all loss or damage to the resident's person or property in the rental unit, including any loss by fire in the rental unit or the negligence of the owner, and an indemnification of the owner;

- Required the tenant surrender the unit in good condition and repair, reasonable wear and tear and damage by acts of God or fire excepted;

- Prohibited the tenant from keeping anything in the rental unit or the building to cause the fire or hazard insurance to become void, suspended, or rated more hazardous and, if the landlord's insurance premiums increased, the tenant is responsible for it.[22]

The lease did not require the tenant to provide fire insurance for the landlord's real property.[23] Judge Del Pesco concluded the lease, taken as a whole, implied the landlord will carry general fire and hazard insurance for the building and the property not owned by the tenant. She

concluded the terms of the lease allocated risks between the parties, with each to protect his own property to the mutual benefit of the other, "that is, by not expecting the other to bear the liability or cost of carrying duplicative coverage."[24]

Judge Del Pesco also concluded the "trend of modern jurisprudence holds" fire insurance secured by the landlord is obtained for the mutual benefit of landlord and tenant, citing *Sutton* and decisions from sixteen other states applying this principle.[25] She recognized the "clear majority" of courts regard a landlord and tenant co-insured as a matter of law "because the reasonable expectations they derive from their privity under the lease, their respective insurable interests in the property (the landlord's interest in the fee and the tenant's possessory interest), the commercial realities under which landlords insure the leased premises and pass on the premium cost in rent, the recognition that most fires are caused by negligent conduct, and the requirement that insurers reimburse for fires caused by their insured's negligence."[26]

Judge Del Pesco found no express language in the lease providing for the tenant's liability in the event the tenant negligently caused a fire to the rental property.[27] Judge Del Pesco found "in the absence of an express agreement or provision in the lease that would place liability on the tenant for the tenant's negligence in causing the fire, the landlord's carrier cannot obtain subrogation against the tenant."[28] Judge Del Pesco adopted the Oklahoma court of appeals's reasoning in *Sutton*, and as a matter of Delaware law, concluded an insurer cannot bring a subrogation action against a tenant where there is no express agreement or provision in the lease placing liability on the tenant for his negligence in causing a fire. The tenant is deemed to be an implied co-insured of the landlord absent express agreement to the contrary.

**B. We must examine the lease language as a whole.**

We examine the vagaries of lease language under *Lexington*. Judges base the tenant's potential liability to the landlord's insurer in subrogation based on the landlord and tenant's agreement read as a whole. We are mindful subrogation cannot give the insurer as subrogee more rights than the landlord.

Not every judge has found the insurer is barred by the absence of express lease language. For example, Judge Herlihy in *Deardorff Assocs., Inc. v. Brown* denied a tenant's motion for summary judgment seeking to bar a claim against it arising from a fire in a leased store allegedly caused by the store's employee resulting in damage to the shopping center.[29] The insurer paid the loss under the policy issued to its insured shopping center owner for damage caused by the fire. The insurer then sought to subrogate its loss against the tenant business. The business argued as a matter of law it is a co-insured as a tenant of the landlord shopping center and cannot be sued in subrogation.

Judge Herlihy examined the language of the lease between the business and the insured owner of the shopping center to determine whether the lease contained a "clearly expressed intent" to make a tenant liable for a fire it negligently caused. The lease provided:

- In the "Maintenance by Landlord" section: "Landlord ***shall not be responsible or liable for damage*** (excluding reasonable wear and tear) ***caused by any act or negligence*** of Tenant or his employees, agents, invitees, licenses, or contractors …";[30]

- In the Termination section: "Tenant shall vacate the leased property in good order and repair, ordinary wear and tear and casualties by accidental fire ***not occurring through Tenant's negligence alone excepted***, …"[31]

Judge Herlihy reasoned these lease provisions are materially different than the lease language reviewed by Judge DelPesco in *Lexington*: the maintenance provision specifically

excluded the landlord's responsibility and liability for damage "caused by any act or negligence of tenant" and the termination clause provided the tenant shall vacate the premises in good order, with ordinary wear and tear and casualties by accidental fire **not** occurring through **tenant's negligence** alone excepted.[32]

Judge Herlihy reasoned if the same lease provisions as in *Lexington* were before him, he would reach the same conclusion as Judge Del Pesco and dismiss the insurer's subrogation action. But Judge Herlihy found two provisions in the lease imposed liability on the tenant for its negligence, "an exception to the exception, that is, excepted out of the usual wear and tear surrender language are tenant negligently caused fires."[33] Considering this language, Judge Herlihy denied the tenant's motion for summary judgment.

We compare the lease reviewed by Judge Herlihy with language more similar to language in the lease between Ms. Craig and Mr. Lauzon. Within the last fourteen years, four decisions addressing subrogation claims under *Lexington* and the *Sutton* rule found the language of the relevant leases do not expressly hold a tenant liable for negligently caused fire.

In *Hartford Insurance Company v. Community Systems, Inc.*, a tenant business rented office space from an owner landlord insured by Hartford.[34] An employee of the tenant business allegedly negligently started a fire spreading to other areas of the insured property causing damage. Hartford paid its insured landlord for the loss and then sought to subrogate its loss. The tenant moved to dismiss a subrogation claim, arguing it is a co-insured shielded from Hartford's subrogation claim.

Judge Ableman concluded the lease language, taken as a whole, contemplated the landlord will be responsible for carrying general fire and hazard insurance for the protection of the building and property occupied by the tenant.[35] The lease provided:

- the tenant is responsible for paying a portion of all insurance premiums including fire insurance as well as a portion of rental insurance;

- landlord and tenant mutually waive all rights of subrogation against each other for any and all losses to the premises during the term of the lease whether caused by the negligence of the landlord or the tenant; and

-  if the tenant's occupancy causes an increase in premiums for fire insurance, the tenant shall pay the additional premiums.[36]

Judge Ableman concluded the lease barred Hartford's subrogation claim because implicit in the language requiring the tenant to share in the cost of fire insurance is an assumption the coverage purchased by the landlord would insure the tenant as well as the landlord.[37] Judge Ableman concluded the lease evidenced an assumption by the landlord of the risk of fire to the property, the tenant is a co-insured under the landlord's casualty insurance, and dismissed Hartford's subrogation action.[38]

Our insurer today is also familiar with this concept from an opinion from Chief Judge Stark in *State Farm Fire & Casualty Co. v. Lambert*.[39] A tenant caused substantial fire damage at the property by leaving a burning candle unattended. State Farm paid the loss and sought to subrogate against the tenant for her negligence and breach of contract. The tenant moved to dismiss arguing she is a co-insured under the State Farm policy because the lease did not expressly hold her liable for fire damage caused by negligence.

Chief Judge Stark studied the tenant's obligations under the lease:

- the tenant is responsible for keeping the residence clean and sanitary and, on termination of the lease, surrender the residence to the owner in as good condition as when first rented except for reasonable wear and tear;

- the tenant is responsible for damages to the unit and premises other than reasonable wear and tear caused by any member of the tenant's family, guests, or persons under tenant's control; and,

- the tenant is responsible for paying for tenant-caused damages.[40]

State Farm argued the obligation requiring the tenant to pay for damages caused to the property evidences a clear intent to hold the tenant liable for damage caused by negligent fires.[41] Chief Judge Stark rejected State Farm's argument. Applying *Lexington*, Chief Judge Stark reasoned the lease is silent with regard to liability for negligent fires and the parties' responsibilities for maintaining fire insurance. The absence of language in the lease addressing these two key issues — the tenant's liability for negligent fires ***and*** the allocation of responsibilities in maintaining fire insurance — did ***not*** constitute a clear expression of the division of fire risks between the landlord and the tenant or express an intent by the landlord to hold the tenant liable for negligent fires.[42] The broad language of the lease did not show the parties specifically considered and intended to hold the tenant liable for negligent fires.[43] Chief Judge Stark explained while there are no particular words required in a lease to hold a tenant liable, the lease as a whole "must clearly express the intent to hold the tenant liable for negligent fires to the leased property" and the intent "should be shown in the lease agreement by a ***clear contemplation*** of the 'division of risks between the landlord and tenant.'"[44] Chief Judge Stark dismissed State Farm's complaint.

Judge Butler followed *Lexington* in a case with "remarkable factual similarities."[45] A fire allegedly caused by the negligence of a tenant resulted in damage to the apartment complex and the death of the allegedly negligent tenant in *Deloach*. Cincinnati Insurance Company paid its insured owner of the apartment complex. Cincinnati sought to subrogate the loss against the tenant's estate. Judge Butler found Cincinnati must distinguish the facts of the case from *Lexington.* Cincinnati pointed to provisions of the lease requiring the tenant's obligation to return the property in good condition, pay for damages in excess of normal wear and tear, and pay for any damages caused by the tenant or her relative or guests.[46] Judge Butler disagreed these provisions constituted an "express agreement" shifting the risk of fire loss from the landlord to the

tenant and the only language in the lease mentioning fire loss "merely sets forth the tenant's available remedies to abrogate the lease under the landlord-tenant code in event of a fire."[47] Judge Butler concluded the lease did not satisfy *Lexington's* mandate a risk-shifting provision placing the risk of fire loss to the rental unit or entire property caused by a tenant's negligence must be clearly and unequivocally stated in the lease.[48] Judge Butler dismissed the insurer's subrogation claim.

Judge Robinson applied *Lexington* five months ago when dismissing an insurer's subrogation claim after studying the landlord and tenant's agreement as to loss from water.[49] The tenant in *Donegal* allegedly set off the sprinkler system in an apartment building by operating a drone inside the apartment. The sprinkler system caused extensive water damage. Donegal Insurance Group insured the apartment building's owner and paid to repair the water damage. Donegal then sought to subrogate its loss against the tenant.

The tenant argued tenants are co-insured under the policy and there is no express agreement in the lease placing liability on the tenant for such damage under *Lexington* and the *Sutton* rule. Donegal Insurance Group disagreed, arguing the lease specifically made the tenant liable for damage under two provisions:

- the tenant agreed to be solely responsible for all loss or damages to them or their property or any other person in the rental unit and storage areas with the exception of the landlord's gross negligence; agreed to indemnify and hold harmless the landlord from any loss occasioned by the tenant's breach of any term of the lease agreement or caused by the tenant's family, guests, visitors, agents, or employees; and agreed to obtain adequate content and liability insurance of not less than $300,000 to afford protection "against the risks herein assumed"; and

- the tenant, by accepting the lease agreement, agreed to be responsible for "all damages accidentally, maliciously, intentionally, or negligently caused by the tenant, tenant's family, guests or invitees to any of the property of the landlord."[50]

Judge Robinson disagreed these provisions constituted a clear expression to make the tenant liable for his negligence. Judge Robinson found the provisions of the lease relied on by Donegal are substantially the same as the language of the leases considered in *Lexington*, *Deloach*, and *Lambert*.[51] Judge Robinson considered the lease as a whole and concluded it did not clearly express an intent to hold the tenant liable for negligence and Donegal failed to cite — and could not cite — language in the lease differentiating the lease from the leases in the other Delaware cases.[52]

Judge Robinson further noted the "important policy considerations underlying the *Sutton* rule" applicable to the case before him. Judge Robinson cited the reasoning in *Lexington* recognizing a landlord's "dominant relationship over the residential tenant, the typical assignment of risk of loss for fire, the practical effect that rental payments contribute to the cost of the landlord's fire insurance premiums, the mutual benefits derived by the parties from dividing respective liabilities, and the efficiency of not carrying duplicative insurance coverage on the same property."[53] Judge Robinson granted the tenant's motion for summary judgment on the insurer's subrogation claim.

### C. Ms. Craig and Mr. Lauzon did not agree to impose liability on Mr. Lauzon for negligence in causing a fire in the leased Property.

Mr. Lauzon argues we must dismiss State Farm's action because there is no clear expression of his liability for negligently causing a fire or putting the burden on him to obtain fire insurance on Ms. Craig's real property. Absent such language, Mr. Lauzon argues he is a co-insured as a matter of law and we must dismiss State Farm's complaint.

State Farm argues this case is distinguishable from *Lexington* and *Sutton* for three reasons: (1) the Residential Lease Agreement between Ms. Craig and Mr. Lauzon contains express language holding Mr. Lauzon liable for damage to the property; (2) there is nothing in the

Residential Lease Agreement from which Mr. Lauzon, as tenant, could reasonably believe he is a co-insured under Ms. Craig's policy because he bought his own policy covering the loss; and (3) because State Farm's subrogation action is based on Mr. Lauzon's negligence, it is inequitable for Ms. Craig's policy "to be primary when [Mr. Lauzon] who caused the damage was covered under his own policy."[54]

We reject State Farm's arguments in their entirety. Under *Lexington* and its progeny, a tenant is a co-insured of the landlord under the landlord's fire insurance policy even where the tenant may have negligently caused the fire absent a clearly expressed intent in the lease to the contrary. Judge Del Pesco in *Lexington* adopted the majority view announced in *Sutton* reflecting the "modern trend" in the law presuming a tenant is a co-insured under the landlord's fire insurance policy absent a "clear expression" in the lease making the tenant liable for his negligence.[55]

State Farm calls our attention to one provision of the lease between Mr. Lauzon and Ms. Craig it believes expressly making Mr. Lauzon's liable for his negligence:

- "If any required repair is caused by the negligence of the Tenant and/or Tenant's guests, the Tenant will be fully responsible for the cost of repair and/or replacement that may be needed."[56]

We disagree this language constitutes a clear expression of Mr. Lauzon's liability for negligently causing a fire. As *Lexington* and its progeny teach, we read the language of the lease as a whole. And as a whole, Section 14 of the Residential Lease Agreement provides:

**14. MAINTENANCE AND REPAIRS:** The Tenant is responsible for all repairs needed in or about the Leased Premises up to and including $80. …

B. If any required repair is caused by the negligence of the Tenant and/or Tenant's guests, the Tenant will be fully responsible for the cost of the repair and/or replacement that may be needed.[57]

…

13

We read this section as the parties agreeing to limit Mr. Lauzon's responsibility for repairs to "up to and including $80." Section 14 further details the agreement as to Mr. Lauzon's maintenance obligations including: keeping the premises clear and sanitary; abiding by local recycling regulations; properly using and operating electrical, cooking, and plumbing fixtures and keeping them clean; prohibiting the tenant from painting, altering, improving, or making additions to the premises without the landlord's written permission; removing snow and ice from stairs, walkways, and driveways; maintaining the lawn and landscaping by cutting grass, removing weeds, and pruning trees; and providing his own pest control service.[58] If repairs are needed, the tenant is responsible for promptly notifying the landlord of the need for any repair and, if the repair is caused by the negligence of the tenant, the tenant is fully responsible for the cost of repair or replacement up to $80.[59]

Nothing in this provision imposes liability on Mr. Lauzon for negligent fires. Chief Judge Stark in *Lambert* rejected State Farm's argument relying on substantially similar language. He found lease provisions making the tenant responsible "for damages to the unit and premises, other than normal wear and tear" and "repair of tenant-caused damages must be completed by the owner at the expense of the tenant" ***did not*** clearly express any contemplation of the division of fire risks between the landlord and the tenant or express an intent by the landlord to hold the tenant liable for negligent fires.[60]

Judge Robinson in *Donegal Insurance Group* rejected similar language as a clear expression of a tenant's liability. He found language in the lease making a tenant responsible for damages caused "accidentally, maliciously, intentionally, or negligently" ***and*** language obligating the tenant to obtain $300,000 in content and liability insurance did not contain an express agreement placing liability for damage on the tenant.[61]

14

Judge Butler in *Deloach* rejected the insurer's argument language in the lease obligating the tenant to return the property in good condition, to pay for damages in excess of normal wear and tear, and to pay for any damages to the property caused by the tenant, his relatives, or guests, do not constitute an express agreement shifting the risk of fire loss to the tenant finding this language "far afield of loss caused by fire due to the negligence of the tenant."[62]

Section 14(B) of the lease relied on by State Farm does not meet the standard under Delaware law and State Farm does not explain how similar language rejected in *Lambert*, *Donegal*, and *Deloach* is distinguishable. Ms. Craig's and Mr. Lauzon's lease is different from the other cases because Section 20 of the Agreement specifically addresses insurance and limits Mr. Lauzon's obligation. Section 20 does not require Mr. Lauzon to purchase insurance — it simply "encourages" him to do so and then only to insure his ***personal*** property and warns he is solely responsible for any damage or loss to ***his*** personal property.[63] There is no mention of fire insurance or hazard insurance or any language allocating liability for negligent fires or Mr. Lauzon's responsibility for maintaining fire insurance. We cannot see how the lease specifically relieving an obligation on Mr. Lauzon to obtain ***any*** insurance can be ignored in favor of the repairs clause at Section 14(B) which have been rejected in *Lambert, Donegal,* and *Deloach*. Ms. Craig could have, but did not, allocate the burden of a loss due to fire on Mr. Lauzon by making him responsible for fire loss caused by his negligence. Considering the Residential Lease Agreement as a whole, as we are required to do under *Lexington* and its progeny, there is nothing imposing liability on Mr. Lauzon for negligent fires or imposing an obligation to purchase fire insurance. Indeed, the lease did not obligate him to purchase ***any*** insurance.

We reject State Farm's other argument there is nothing in the lease suggesting Ms. Craig "was required to or had fire insurance for [Mr. Lauzon] to reasonably rely upon."[64] This argument

ignores Delaware law beginning with the Judge Del Pesco's *Lexington* decision as a matter of law tenants are co-insureds under the landlord's fire insurance policy unless the lease clearly expresses an intent to the contrary. State Farm misunderstands the law; the tenant is presumed to be a co-insured under the landlord's policy absent contrary language, not the other way around.

We also reject State Farm's third argument  – with no facts in its amended Complaint — "[i]n fact, [Mr. Lauzon] had his own fire insurance which stands as proof that [Mr. Lauzon] did not rely upon any assertions from [Ms. Craig] regarding [her] duty to procure insurance."[65] State Farm argues it would be "inequitable" for it to cover Ms. Craig's loss where Mr. Lauzon, who caused the fire by negligently disposing of his cigarette, had his own fire coverage. State Farm did not allege Mr. Lauzon "had his own fire insurance"; the amended Complaint alleges only Mr. Lauzon "maintained his own policy of insurance relative to" the Property.[66] We have no idea what type of policy and what hazard the policy, if any, insured Mr. Lauzon. State Farm may not now raise unpleaded facts and we need not take this assertion as true in determining Mr. Lauzon's motion to dismiss.[67]  We are also unaware of why we should disregard longstanding Delaware law since *Lexington* to read extraneous facts into Ms. Craig's and Mr. Lauzon's agreement. They did not express agreement or provision in the Residential Lease Agreement placing liability on Mr. Lauzon for his negligence in causing a fire.

As a matter of law, Mr. Lauzon is a co-insured under Ms. Craig's Policy unless the Residential Lease Agreement clearly expresses an intent to hold Mr. Lauzon liable for fire damages. And the Residential Lease Agreement does ***not*** clearly do so. Time and again Delaware courts find the language cited by State Farm does ***not*** constitute a clear expression of the parties' intent to shift liability to the tenant for fire negligence.

We grant Mr. Lauzon's motion and dismiss State Farm's subrogation action with prejudice as an amendment would be futile. Our Court of Appeals instructs we are to "freely give" leave to amend under Federal Rule of Civil Procedure 15 "when justice so requires."[68] Whether to allow amendment is within our discretion and we may deny leave to amend if it would be futile.[69] An amendment is futile if it would fail to state a claim upon which relief could be granted applying the same standard as Rule 12(b)(6).[70] State Farm's amendment would be futile. We already found the Residential Lease Agreement between Ms. Craig and Mr. Lauzon does not clearly express the parties' intent to shift liability to Mr. Lauzon for fire negligence. No amendment can change the language of the Residential Lease Agreement. We cannot find the unpleaded possibility of Mr. Lauzon also securing property insurance may affect State Farm's ability to change the terms of the lease. Mr. Lauzon's voluntary purchase of insurance (if it happened) does not change the unambiguous language in the lease confirming the understanding of Ms. Craig and Mr. Lauzon. State Farm is bound by the lease language and cannot plausibly state a subrogation claim.

### III. Conclusion

We grant Mr. Lauzon's motion and dismiss State Farm's subrogation action with prejudice.

---

[1] D.I. 6 ¶ 6. State Farm attached the Residential Lease Agreement identifying Andrew Lauzon, Roseann Lauzon, and Carol Athearn as tenants. *See* D.I. 6–1 ¶ 2 at 3. Mr. Lauzon and Ms. Craig signed the July 2016 Residential Lease Agreement for a term of one year, renewed on a month-to-month basis unless either party provided written notice of termination. D.I. 6–1 ¶ 23 at 7. The parties extended the Residential Lease Agreement for 2021. D.I. 6 ¶ 6. The 2021 "Lease Renewal Agreement" State Farm attached to its amended Complaint is signed by a Chris Ogle as landlord, not Cecelia Craig. *See* D.I. 6–1 at 22. And the Lease Renewal Agreement, executed by Landlord Chris Ogle and Tenants Andrew Lauzon and Carol Lauzon on January 6, 2021, recites the lease agreement dated July 31, 2016 and any amendments, the expiration of the lease on January 6, 2021, and the parties' desire to extend the terms of the lease from January 6, 2021 to September 6, 2021. *Id.* State Farm does not provide us with a Lease Renewal Agreement extending the term of the lease beyond September 6, 2021. We wonder how the policy issued by State Farm to Ms. Craig remained in effect in 2021 when, at least as of January 6, 2021, Chris Ogle appears to be the

landlord of the Property and the lease expired on September 6, 2021. We also could ask what lease agreement, if any, governed the rental of the Property when the Lease Renewal Agreement relied on and provided by State Farm expired on September 6, 2021, two-and-a-half months before the November 29, 2021 loss. But State Farm seems to assume the identity of the landlord as its insured and Mr. Lauzon as the tenant at the time of the loss. We must accept its allegations as true.

[2] D.I. 6 ¶ 9; D.I. 6–1 ¶ 14 at 5.

[3] D.I. 6 ¶ 8; D.I. 6–1 ¶ 18.B. at 6. A Smoke-Free Property Addendum is incorporated into the Residential Lease Agreement prohibiting smoking "within the rental unit" and "[w]here applicable, smoking shall not be permitted in any common areas, including but not limited to hallways, adjoining grounds, balconies and/or patios." D.I. 6–1 at 16.

[4] D.I. 6–1 ¶ 20 at 6.

[5] D.I. 6 ¶ 7. State Farm argues, but does not allege under Rule 11, "at all times relevant, [Mr. Lauzon] was insured for the loss by Allstate Insurance Company." D.I. 8 at 4, 7. The amended Complaint does not allege Allstate insured Mr. Lauzon or the type of loss Allstate insured. State Farm argues Mr. Lauzon's Allstate policy should be responsible for the damages caused by his negligence. These are facts not alleged in the amended Complaint. State Farm may not amend its amended Complaint by asserting new facts through its attorney's undocumented response to the Motion to dismiss. *Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984)). *See also Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the fact allegations in determining the sufficiency of [the] complaint under Rules 9(b) and 12(b)(6)").

[6] D.I. 6 ¶¶ 10, 12, 13.

[7] D.I. 6 ¶¶ 12–14, 18.

[8] *Id.* ¶ 15.

[9] D.I. 6.

[10] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. Id. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP,* 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has

acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*., 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we " 'tak[e] note of the elements a plaintiff must plead to state a claim' "; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]' "; and, (3) " '[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' …, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016).

[11] *State Farm Fire & Casualty Co. v. Lambert*, 2017 WL 5593784, at *2 (D. Del. Nov. 21, 2017) (quoting *Lexington Ins. Co. v. Raboin*, 712 A.2d 1011, 1015 (Del. Super. Ct. 1998)).

[12] 712 A.2d 1011, *aff'd* 723 A.2d 397 (Del. 1998).

[13] D.I. 8.

[14] 532 P. 2d 478 (Okla. Civ. App. 1975).

[15] *Id.* at 482.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* (emphasis added).

[20] *Id.*

[21] *Id.* at 1017.

[22] *Id.* at 1013–14.

[23] *Id.* at 1014.

---

[24] *Id.*

[25] *Id.* at 1015, n. 17.

[26] *Id.* at 1016 (footnote omitted).

[27] *Id.* at 1017.

[28] *Id.* at 1016.

[29] *Deardorff*, 1999 WL 458777 (Del. Super. Ct. May 6, 1999). Judge Herlihy applied *Lexington* to a commercial lease in *Deardorff* even though *Lexington* occurred in the context of a residential lease, finding whether the lease is residential or commercial is not material. *Id.* at *3 (citing *Lexington*, 712 A.2d at 1016, n. 18).

[30] *Id.* at *2 (emphasis added).

[31] *Id.* at *3 (emphasis added).

[32] *Id.*

[33] *Id.*

[34] 2009 WL 1027103 (Del. Super. Ct. Apr. 16, 2009).

[35] *Id.* at *3–*4.

[36] *Id.*

[37] *Id.* at *4.

[38] *Id.* at *4–*5.

[39] 2017 WL 5593784 (D. Del. Nov. 21, 2017).

[40] *Id.* at *1.

[41] *Id.* at *3.

[42] *Id.*

[43] *Id.*

[44] *Id.* (quoting *Lexington*, 712 A. 2d at 1014–17) (emphasis added).

[45] *Deloach v. Houser,* 2018 WL 5899080 at *1 (Del. Super. Ct. Nov. 9, 2018).

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Donegal Insurance Group v. Thangavel*, 2022 WL 4284784 (Del. Super. Ct. Sept. 15, 2022). Judge Robinson considered the possible damage caused by fire and water similar in nature sufficient to extend the *Sutton* rule to water damage. *Id.* at *3.

[50] *Id.* at *1.

[51] *Id.* at *2.

[52] *Id.* at *3.

[53] *Id.* (quoting *Lexington*, 712 A. 2d at 1016). Judge Robinson also relied on the reasoning in *Deloach* in support of his reasoning.

[54] D.I. 4.

[55] *Hartford Ins. Co.*, 2009 WL 1027103 at * 2.

[56] D.I. 8 at 6, citing § 14(b) of the Residential Lease Agreement at D.I. 6–1 at 5.

[57] D.I. 6 ¶ 9; D.I. 6–1 ¶ 14 at 5.

[58] D.I. 6–1 ¶ 14 at 5.

[59] *Id.*

[60] *Lambert*, 2017 WL 5593784 at *3.

[61] *Donegal Ins. Grp.*, 2022 WL 4284787 at *1–*3.

[62] *Deloach*, 2018 WL 5899080 at *1.

[63] D.I. 6–1 at 6.

[64] D.I. 8 at 6.

[65] *Id.* Mr. Lauzon concedes he had a policy but does not elaborate on the type of policy. *See* D.I. 9 at 2. Mr. Lauzon argues the *Sutton* rule applies whether he had his own insurance policy and nothing in *Sutton* or its progeny hold a tenant with additional insurance vitiates the presumption a tenant is a co-insured with the landlord. *Id.* at *2–*3.

---

[66] D.I. 6 at 7.

[67] Chief Judge Stark rejected State Farm's argument the tenant "was aware of her liability as she likely purchased renter's insurance" which State Farm intended to show in discovery. *Lambert*, 2017 WL 5593784 at *3, n. 2. Chief Judge Stark rejected State Farm's argument because it failed to allege this fact in the complaint and did not take State Farm's assertion as true in evaluating the tenant's motion to dismiss.

[68] *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (quoting Fed. R. Civ. P. 15(a)(2)).

[69] *Id.* at 149 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[70] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).